ROBIN McKINZIE )
)
V. ) NO. 2:14-CV-261
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

# REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's applications for disability insurance benefits and supplemental security income under Social Security Act were denied following a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 15], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 17].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The defendant was 44 years of age on his alleged disability onset date of September 15, 2001. He has a high school education. At the time of the ALJ's hearing decision, he was 56 years old, which is "advanced age" under the applicable regulations. He has past relevant work experience which was skilled, but the skills are not transferrable (Tr. 48). No one disputes that he cannot perform any of his past relevant work. A significant portion of the plaintiff's medical history is accurately set forth in the Commissioner's brief as follows:

> Ellimoottil Kuriakose, M.D., examined Plaintiff on June 26, 2012, to establish care and request a referral to a neurologist due to memory loss and confusion (Tr. 321, 323). Dr. Kuriakose diagnosed memory loss and depressive disorder not elsewhere classified, and medication was prescribed (Tr. 324). Dr. Kuriakose next examined Plaintiff on July 24, 2012 (Tr. 313-16). A mental status examination revealed intact judgment and insight, Plaintiff's memory was getting better, and his depression and sleep were improving (Tr. 314-15).
> Richard Lee Belsham, Ph.D., examined Plaintiff on September 27, 2012 (Tr. 335-38). Dr. Belsham noted that Plaintiff had poor hygiene and attire, good eye contact; normal, but slow speech; restricted but appropriate affect; organized thoughts; relevant thought content and intact/good reasoning ability (Tr. 335). Dr. Belsham also noted that Plaintiff reported no delusional thinking, paranoid ideation, or hallucinations; and his memory was intact (Tr. 335). Dr. Belsham also noted that Plaintiff could attend to his personal hygiene needs and conduct daily chores such as cooking, housework, laundry and grocery shopping (Tr.336). Dr. Belsham diagnosed depressive and cognitive disorders, both not otherwise

specified; and he estimated Plaintiff's global assessment of functioning (GAF) at 50 (Tr. 336). He opined that Plaintiff appeared capable of following simple instructions and relating and acting appropriately with others, but his ability to maintain attention and concentration appeared variable and his ability to deal with stressed appeared to be compromised (Tr. 337). Dr. Belsham further opined that Plaintiff appeared to be able to relate and act appropriately with others, but that he appeared slow (Tr. 337). Dr. Belsham also noted that Plaintiff made a "poor impression," and that he would "more than likely" not be able to seek and secure employment (Tr. 337).

    Plaintiff was examined by David McConnell, M.D., on July 15, 2013 (Tr. 352-55). Dr. McConnell stated that Plaintiff did not take prescription medication, and a physical examination revealed negative straight leg raising while sitting and positive straight leg raising while lying down (Tr. 353). Plaintiff has full range of motion without pain or limitation; and his gait and station appeared normal (Tr. 353). Plaintiff had no paraspinous muscle spasm; he could heel, toe, and tandem walk and balance on one leg; and lumbosacral X-ray showed minimal DDD at L5-S1 and minimal osteoarthritis (Tr. 353, 354).

    Plaintiff was next examined by Dennis Spjut, PhD, on August 12, 2013 (Tr. 369-72). Dr. Spjut noted that Plaintiff drove to the appointment and arrived early, he was cooperative and Plaintiff responded to all interview questions (Tr. 369, 371). Plaintiff was soft-spoken and his affect was depressed, but there was no specific anxiety, no grossly illogical thought processes or loss of contact with reality, and no evidence of hallucinations or delusions (Tr. 371). Dr. Spjut opined that Plaintiff would not have difficulty understanding instructions, but Plaintiff described short-term memory problems (Tr. 372). Dr. Spjut further opined that Plaintiff did not "impress" him as one who interacted effectively or confidently with the general public, but he would "likely" be aware of most normal hazards and be capable of taking precautions. Dr. Spjut also opined that Plaintiff was capable of traveling as long as his girlfriend was in the vehicle with him (Tr. 372).

[Doc. 18, pgs. 2-4].

The record also contains analysis of the foregoing medical opinions by "State Agency" personnel, notably Dr. Andrew Phay, Ph.D., and Dr. Reeta Misra, M.D. Besides evaluating the records and opinions of the other doctors in the record, Drs. Phay and Misra offered their own opinions regarding the plaintiff's limitations. These are contained in the Disability Determination Explanation (Tr. 72-87).

Dr. Phay, after reviewing the examination report and opinion of Dr. Spjut, opined

3

that the plaintiff had moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. He noted the plaintiff drives. He discussed the plaintiff's activities of daily living. While the plaintiff's mental impairment was severe, it did not meet one of the Listings of Impairments (Tr. 80). Dr. Phay opined that the plaintiff could remember locations and work procedures, understand simple, low level detailed tasks, and maintain concentration, persistence and pace for such tasks in spite of his symptoms. Plaintiff could sustain an ordinary work routine around others and make acceptable work-related decisions. He could interact appropriately with the general public, supervisors and peers with occasional disruptions due to his psychological symptoms. He could be aware of and respond to changes in the work place only on an infrequent basis but could travel to unfamiliar places. He could set and pursue realistic work goals in the work setting. (Tr. 85-86). The Disability Determination Explanation opined that the plaintiff was "partially credible." (Tr. 81).

Likewise, Dr. Misra evaluated plaintiff's medical records and the consultative examination of Dr. McConnell. He opined that the plaintiff could occasionally lift 50 pounds; frequently lift 25 pounds; stand and/or walk about 6 hours in an 8 hour workday, sit for about 6 hours in an 8-hour workday and perform postural activities (Tr. 82). He found that the medical assessment of Dr. McConnell was "too restricted for the objective findings." (Tr. 83).

The ALJ, at the administrative hearing, took the testimony of Cathy E. Sanders, a

4

Vocational Expert ["VE"]. He asked Ms. Sanders to assume a person of plaintiff's age, educational background and work experience. He asked her to assume the person "could do medium work with frequent posturals; occasional ropes, ladders, scaffolds, limited to simple routine, repetitive work; no public contact." When asked if there would be jobs such a person could perform, she identified those of bus boy/cafeteria helper, with 2,900 jobs in Tennessee and 228,300 in the nation; dishwashers, with 4,660 in Tennessee and 289,000 in the nation; cleaners with 1,800 in Tennessee and 28,500 in the country; and janitors with 19,000 in Tennessee and 1.1 million in the nation (Tr. 48).

The ALJ rendered his hearing decision on May 20, 2014 (Tr. 9-22). After explaining the five-step sequential evaluation process for determining whether a person is disabled under the Social Security Act (Tr. 10-11), the ALJ found that the plaintiff had severe impairments of degenerative disc disease; cognitive disorder/organic brain syndrome; affective disorder; personality disorder; and a history of substance abuse (Tr. 11). He found that the plaintiff's headaches, "possible hepatitis C," and alleged respiratory difficulties were not severe impairments due to lack of objective proof of these conditions in the record or a lack of treatment for them (Tr. 12-13).

He then found that the plaintiff's condition did not meet or equal any of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1. In doing so, he considered both relevant physical and mental listings. Regarding the latter in the process of determining whether the plaintiff met the required levels of severity in the mental listings, he found that the plaintiff had a mild restriction regarding activities of daily

5

living; moderate difficulties in social functioning; and moderate difficulties with concentration, persistence, or pace, with no episodes of decompensation. These findings were based upon the plaintiff's activities and upon the information provided by the consultative examiner. In making this finding, the ALJ opined that the plaintiff would have difficulties with complex tasks, but could follow simple instructions and could satisfactorily accomplish simple, repetitive and routine tasks in a work environment (Tr. 13-14).

The ALJ then stated his finding with respect to the plaintiff's residual functional capacity ["RFC"]. He found that the plaintiff could perform medium work as defined in the regulations (lifting up to 50 pounds occasionally and 25 pounds frequently) with frequent postural activities and no more than occasional climbing of ladders, ropes or scaffolds, with a limitation to "simple, routine and repetitive tasks with no public contact." (Tr. 15). He then discussed and evaluated the evidence upon which he based this finding.

He noted first the plaintiff's severe brain injury and the accompanying problems of memory loss, confusion and depression. The ALJ stated that in spite of these being serious impairments, "[t]he evidence provides no foundation for any debilitating manifestation or serious functional deficit that would preclude the performance of all work activity." (Tr. 15).

After stating that the plaintiff had not asserted back pain as an impairment when he filed his application for benefits, the ALJ noted the plaintiff had complained of this

6

condition when examined by Dr. McConnell. He mentioned Dr. McConnell's observations in this regard, such as the fact that the plaintiff did not wear a back brace and had not been treated by an orthopedist or received physical therapy. Dr. McConnell noted positive supine straight leg raising at 45 degrees and minimally decreased intervertebral disc space heights at the LF-S1 level, but the rest of the exam was essentially normal. The ALJ took this, as well as plaintiff's testimony, into account to the extent that he limited his climbing of ladders, ropes and scaffolds to "occasionally." (Tr. 15-16).

He then discussed the plaintiff's head trauma which he sustained in an assault in 1999. The ALJ noted that the first mention of this condition set out in the medical record was on April 12, 2012. He told a social worker about his condition while in jail on domestic violence charges and was told he should be on disability. At that time, while the plaintiff was lethargic and had a depressed mood, his thought process was appropriate, his speech and motor behavior were normal and his attitude and behavior were cooperative. It was recommended that he seek substance abuse treatment but he was not interested. (Tr. 16).

He then discussed the various medical professionals who examined the plaintiff, starting with Dr. McConnell. After recounting Dr. McConnell's exam and opinion, he discussed those of Dr. Kuriakose, Dr. Belsham and Dr. Spjut. All of their opinions are described in the summarization of the medical evidence set forth above. With regard to Dr. Belsham, the ALJ noted his "conclusions are vague, without appropriate definition or

7

clarification and are highly restrictive, based on the clinical evaluation." Similarly, with respect to Dr. Spjut, the ALJ stated "the examiner submitted vague conclusions, using descriptors as questionable and likely without quantifiable functional parameters." (Tr. 16-17).

He then turned to the plaintiff's credibility. He found that the plaintiff was not entirely credible. He found that the testimony at the hearing was not in line with the medical record as to the extent of plaintiff's degree of impairment. The ALJ described all of the plaintiff's activities of daily living from the record as evidence for the ALJ's opinion that he was not precluded from all substantial gainful activity. (Tr. 18).

The ALJ then turned to evaluation of the medical expert opinions, and the weight he assigned to those opinions. He found Dr. Misra, the state agency physician, to be entitled to great weight, and had adopted much of his opinion into the RFC finding. He noted that the evidence from the state agency psychologist indicated that evidence of impairment "was insufficient with no medically-determinable impairment established prior to the date last insured (June 30, 2008)." He stated that he gave "some weight" to Dr. Belsham, the consultative mental examiner, particularly where Dr. Belsham opined that plaintiff was capable of following simple instructions and relating and acting appropriately with respect to others. He did not feel the record and the findings in the exam supported Dr. Belsham's finding that "more than likely he would not be able to seek and secure employment on his own due to confusion." To support this, the ALJ recounted that Dr. Belsham found that the plaintiff's "thoughts were mostly organized,

8

content was relevant, perception appeared normal, insight appeared normal to superficial and judgment appeared fair. His abstract reasoning ability appeared as intact/good as demonstrated by interpretations of proverbs and intelligence appeared to be in the average range and memory appears intact." The ALJ concluded stating that "[t]his mental assessment does not support the restrictive conclusions provided by the examiner." (Tr. 19).

The ALJ then addressed Dr. McConnell's opinion. He found the restrictions on lifting only a maximum of 35 pounds occasionally "somewhat restrictive based on the lack of objective findings and benign clinical evaluation." (Tr. 19).

He likewise gave some weight to the opinions of Dr. Spjut, but felt his restrictions were too restrictive and that he gave vague conclusions as discussed hereinabove (Tr. 19-20).

He found that the plaintiff was unable to perform any past relevant work. He noted the plaintiff was only 44, a younger individual, on his alleged onset date in 2001, and had a high school education. He stated that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules [the "Grids"] as a framework supports a finding that the claimant is 'not disabled'" irrespective of whether his job skills were transferrable to other jobs. (Tr. 20).

He then found that there were other jobs that the plaintiff could perform at his age, and with his education, work experience and RFC which existed in significant numbers in the national economy. He discussed the various Social Security Rulings that he followed,

9

such as SSR 83-11, 83-12, 83-14 and 85-15. He said that if the plaintiff could perform the full range of medium work, he would not be disabled under Grid rule 203-39, which applies to a younger individual with prior skilled or semiskilled work experience which was not transferable to other jobs. Since he could perform only a reduced range of medium work, the ALJ relied upon the testimony of the VE which indicated thousands of regional and millions of national jobs which the plaintiff could perform. Finding that number of jobs to represent a significant number, he found that the plaintiff was not disabled (Tr. 21-22).

Plaintiff first argues that the finding that other jobs exist is not supported by substantial evidence because the consultative psychological examiners, Drs. Belsham and Spjut, both imposed greater limitations than those imposed by the ALJ. Plaintiff states that "there is simply no contrary evidence from any physician or psychologist who has examined the plaintiff…," and "that simply limiting a plaintiff to jobs requiring no more than simple, routine, unskilled work was not adequate to convey moderate limitations in an individual's ability to concentrate, persist or keep pace…," citing *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010).

It is true that no other examining source implied that the plaintiff's mental impairment imposed more than moderate limitations. However, Dr. Phay, the state agency psychologist who reviewed the plaintiff's records, opined that his limitation in concentration, persistence and pace was moderate (Tr. 80 and 84). This is substantial evidence. Both Dr. Phay, and the finder of fact, the ALJ, were skeptical of more serious

10

restrictions opined by the consultative examiners. Also, in the opinion of this Court, *Ealy* is distinguishable.

Plaintiff suggests that as a result of *Ealy, supra*, merely limiting a plaintiff to jobs which are "simple, routine, repetitive tasks" with no contact with the general public does not accurately describe the plaintiff's moderate functional restrictions in concentration, persistence or pace. Thus, states plaintiff, the ALJ cannot rely upon the hypothetical in his finding that jobs existed and that the plaintiff was not disabled.

In *Ealy*, the hypothetical asked by the ALJ to the VE was very similar to that used by the ALJ in the present case. He asked the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy to sustain attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." In the present case, there is no such special requirement, only a moderate limitation, for which substantial evidence exists. While it is true that *Ealy* cites, somewhat in dicta, a district court case, *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005). which held that where a claimant has moderate

11

limitations in concentration, persistence or pace, the hypothetical will never be adequate when it merely limits the claimant to simple, routine, unskilled work, this Court is unwilling to make such a jump. Other district courts in the Sixth Circuit have declined to expand *Ealy* to this degree. *See, Jackson v. Commissioner of Soc. Sec.*, 2011 WL 4943966 (N.D. Ohio. 2011), and *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio. 2013), and this Court finds their reasoning persuasive in this regard. <u>See also</u>, *Smith-Johnson v. Commissioner of Social Security* 579 Fed. Appx. 426, 436-438 (6th Cir. 2014). The Court finds that the hypothetical question in the present case was adequate to express the limitations found by the ALJ, and that there was substantial evidence for those limitations.

Plaintiff also asserts that substantial evidence is lacking for the ALJ to have found the plaintiff to be capable of the lifting requirements of medium work, based upon the 35 pound maximum lifting requirement found by Dr. McConnell. However, Dr. Misra, the state agency physician, and the ALJ, noted that Dr. McConnell's restriction was not supported by his physical exam findings and observations. Dr. Misra opined that the plaintiff could occasionally lift 50 pounds and frequently lift 25. Dr. McConnell's examination findings are more in line with Dr. Misra's opinion than with a restriction to light work. This Court finds that this constitutes substantial evidence to support the ALJ's RFC finding.

Plaintiff also points out that plaintiff may have been a younger individual on his alleged disability onset date in 2001, but since then has moved through the category of

12

"approaching advanced age," and had reached "advanced age" by the time of the ALJ's final decision. This argument is, however, of no consequence if there was substantial evidence, as there is, that the plaintiff could perform a reduced range of *medium* work. It is true that Grid rule 202.04 would compel a finding that the plaintiff was disabled if, at his present age of 57, he could only do the full range of light work with his education and non-transferable skills. But, even if only able to perform light work, he would not have been disabled under Grid rule 202.04 until he reached age 55. However, since there is substantial evidence he can do medium work, he would be "not disabled" under Grid rule 203.15, at advanced age, or even Grid rule 203.07, which applies to an individual over 60 who is "closely approaching retirement age."

Of course, he cannot perform the full range of medium work, and plaintiff asserts that his situation should be judged at the lower classification of light work, where he would now be disabled under the Grid. However, the Social Security Rulings cited by plaintiff instruct the ALJ to seek the assistance of a VE and not mechanically attempt to apply the Grids, which is exactly what the ALJ did here.

Finally, the plaintiff asserts that the ALJ erred in weighing the plaintiff's credibility. The ALJ, as the trier of fact, cited a multitude of reasons for not finding that the plaintiff was completely credible, including activities of daily living and statements made to examiners and their findings (Tr. 18).

The plaintiff indeed has severe impairments, and this was certainly a "close case" in many respects. However, the ALJ did not appear at any point to be undertaking

13

making the necessary findings to purposely deny benefits to the plaintiff. He carefully reviewed the evidence and applied the relevant law in making his determination that the plaintiff was not entitled to benefits under the Act.

There is substantial evidence to support the RFC findings of the ALJ, and his finding that there are a substantial number of jobs which the plaintiff can perform. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 15] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[1]

Respectfully submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).